UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 21-CR- DRAFT** |
| | : | |
| v. | : | |
| | : | |
| **RICHARD HOLMAN** | : | |
| **Defendant.** | : | |

### STATEMENT OF OFFENSE

For purposes of Federal Rule of Criminal Procedure 11(b)(3) and to assist in the determination of the applicable Sentencing Guidelines, the parties stipulate to the following:

**Relevant Persons and Entities**

1. The Defendant, RICHARD HOLMAN, public official, was Chief of the U.S. Department of Agriculture ("USDA") Office of Homeland Security and Emergency Coordination ("OHSEC") Physical Security Division ("PSD"). The PSD is responsible for the protection of all USDA facilities, personnel and assets located outside the National Capital Region. It is headquartered in Washington, D.C.

2. Public Official A was a Program Manager in PSD.

3. Public Official B was the Deputy Chief of the PSD.

4. Communications Resource, Inc. ("CRI") is a Delaware corporation that is headquartered in McLean, Virginia.

5. Eric Schneider was a Vice President and Chief Operating Officer ("COO") of CRI. Schneider owns 49% of CRI.

6. Person A is the Chief Financial Officer ("CFO") of CRI.

7. Person B is the Director of CRI's Business Solutions Group ("BSG"). Person B is also a Program Manager responsible for managing CRI's contracts with the U.S. Department of Agriculture ("USDA").

8. Person C was the Corporate Contracts Administrator for CRI.

9. CRI partnered with Insight Systems Corporation ("Insight") to create STARS II Partnership Joint Venture (dba "SightComm"). SightComm was a Small Business Administration ("SBA") 8(a) company.

### PSD Contracts Awarded to CRI/SightComm

10. Homeland Security Presidential Directive 12 ("HSPD-12") requires all federal agencies to develop and implement a secure and reliable identification for Federal employees and contractors.

11. The PSD was responsible for implementing and managing USDA's HSPD-12 credentialing program, which it did through several contracts awarded to CRI and SightComm.

12. As part of the procurement process for this program, the PSD was responsible for creating Statements of Work ("SOWs") and Independent Government Cost Estimates ("IGCEs") to solicit and evaluate contractor proposals. A SOW sets forth the project requirements for prospective contract bidders, including the tasks to be performed and the objectives for the work. An IGCE reflects the government's best estimate of the costs associated with a potential contract.

13. Ultimately, SightComm and/or CRI were awarded the following contracts (collectively, "the HSPD-12 contracts") to provide secure identification to USDA and contractor employees:

   a. On or about February 24, 2014, the USDA awarded a contract to SightComm ("2014 HSPD-12 Contract") to provide HSPD-12 services to the agency. The total value of the contract was approximately $2,676,559.

   b. On or about December 16, 2014, SightComm was awarded Health & Human Services (HHS) Contract No. GS-06-F-12-38Z, Task Order No. HHSP233201500014W ("2015 HSPD-12 Contract"). The 2015 HSPD-12 Contract was to provide HSPD-12 services to USDA. The total value of that contract was approximately $3,286,065.

   c. On or about January 4, 2016, CRI was awarded HHS Contract No. HHSP233201600012B, Task Order No. HHSP23337002 ("2016 HSPD-12-Contract"). The 2016 HSPD-12 Contract was to provide HSPD-12 services to USDA. The 2016 HSPD-12 Contract included a base year plus four option years. The total value of that contract was approximately $7,331,828.

14. The PSD was also responsible for managing a Blanket Purchase Agreement ("BPA") for Physical Security Support Services.

15. Six companies were awarded contracts under the Physical Security Support Services BPA, including SightComm.

16. The total value of the Physical Support Services BPA Contract for SightComm was approximately $6,178,081.

**Official Acts and Neglect of Official Duty**

17. From on or about July 1, 2013, and continuing until on or about December 5, 2015, in the District of Columbia, RICHARD HOLMAN, a USDA official, solicited and accepted things of value from Schneider and CRI—to include concierge medical services—in

return for giving Schneider and CRI a competitive advantage in the award of HSPD-12 contracts. As part of the scheme, and with the Defendant's knowledge, Schneider drafted – and instructed other CRI employees to draft – Statements of Work ("SOWs") and Independent Government Cost Estimates ("IGCEs")[1] for the 2016 HSPD-12 Contract.

18. The SOW and IGCE were drafted by CRI in such a way to favor the award of the 2016 HSPD-12 Contract to CRI.

19. For example, on June 4, 2015, Public Official A, who reported to the Defendant, sent an email from his personal email account to Person B's CRI email account regarding the upcoming procurement for FY 2016 HSPD-12 services. In his email, Public Official A wrote, in relevant part,

> "Lastly, the 3rd DOC would be the Evaluation Factors to be used for award of the above mentioned [] SOW DOC for the HSPD12 work. ***wouldnt it be easist [sic] to simply take a look at the Eval Factors we used to make the BPA awards here in house and just fine tune them to your liking?*** LENEL VAR, past performance in managing a HD of similar magnitude/complexity and size of that here at USDA, experience in setting up and managing an ePACS system nation-wide of similar scope as that of USDA and its 29 different agencies, experience in security installations in laboratory and data center type facilities, SME staffing who are PMP certified and GIS backgrounds, etc etc…***we want to be careful here to ensure the Factors are solid enough and complex enough, yet at the SAME TIME not TOO complex or hard to reach that the other 2 firms cant possibly be expected to meet. They must be able to be met or proposed against by all three, yet tailored enough and detailed enough to just make them OUT OF REACH to the other 2…know what im saying?*** This then would be our last 3rd DOC im calling it….when do you think this will be ready? ***Eric [the defendant] will probably do this one…***"[2]

20. A printed copy of the June 4, 2015, email was recovered from CRI's offices. Schneider wrote "yes agree" below the quoted paragraph on the printed copy.

---

[1] The ICGE is the government's best estimate of a contract's potential costs.
[2] Emphasis added. Ellipses in original.

21. In many instances, Schneider and others at CRI/SightComm after being requested by Public Official A to write the SOW and IGCE sent the SOW and IGCE to the personal email accounts of HOLMAN and other USDA employees to conceal CRI/SightComm's involvement in preparing the SOW and IGCE.

22. For instance, on August 21, 2015 at 8:51 AM, Schneider sent an email to Person B and the personal email addresses of HOLMAN, Public Official A and Public Official B. In his email, Schneider objected to the evaluation criteria included in a draft SOW for the FY 2016 HSPD-12 Contract and recommended using evaluation factors from a prior award. On the same date, at 1:01 PM, Person B sent an "updated" SOW to Schneider and the personal email addresses of Public Official A and Public Official B.

23. In other instances, Schneider instructed USDA employees to delete metadata associated with SOWs and IGCEs prepared by CRI/SightComm to further conceal their involvement in preparing the SOWs and IGCEs.

24. In order to further advantage CRI/SightComm, Schneider received unsolicited access to competitors' cost proposals that were provided to him by Public Official A. The proposals related to the PSD Physical Security Services BPA. HOLMAN and Schneider knew that having these cost proposals gave CRI an unfair competitive advantage.

25. It would have been inappropriate for the procurement official overseeing the 2016 HSPD-12 Contract to award it to CRI knowing that CRI employees were involved in drafting the SOW and IGCE.

**Items of Value**

26. Between July 2013, and December 2015, Schneider and others at CRI provided things of value to Defendant RICHARD HOLMAN, and other USDA employees, including but

not limited to Corvette wheels, concert tickets, fees for concierge medical services, PGA tour tickets, dinners, alcohol, entry fees at strip clubs, prescription drugs and related cash tips. For example:

27. On or about April 2, 2014, CRI paid for HOLMAN and another USDA official to participate in a high speed ride at a racetrack with a professional driver at Exotic Racing, a Las Vegas Motor Speedway.

28. On or about April 2, 2014, following the high speed ride at Exotic Racing, CRI paid for HOLMAN's dinner at Joe's Seafood, Steak and Prime Stone Crab in Las Vegas, Nevada. The bill for the entire group, including tax and tip, totaled $1,010.14.

29. On or about June 19, 2014, Person B emailed HOLMAN to tell him that she had available tickets to an annual Tiger Woods golf tournament "if [Holman was] interested."
On or about June 20, 2014, Holman replied to Person B, stating "Yes on the tickets." Later that day, CRI sent the tickets by FedEx to HOLMAN'S home address.

30. On or about November 30, 2015, HOLMAN sent an email from his personal email account to Schneider, writing: "Eric, Thoughts about keeping this service?" Attached to the email was an invoice in the amount of $1,800 for "Nu-Living Personal Physical Medical Service Renewal"—a medical concierge service—for HOLMAN.

31. On the same date, Schneider forwarded the email and invoice to Person A, and wrote: "Can I get u to pay This against hspd12 Hhs Corp holdback please."

32. On or about December 3, 2015, SightComm wrote a check, payable to "NuLiving Optimal Wellness," in the amount of $1,800.

## Conclusion

48. This Statement of Offense establishes that the Defendant committed Bribery, in violation of 18 U.S.C. §201(b)(2).

          Respectfully submitted,

          MICHAEL SHERWIN
          Acting United States Attorney
          for the District of Columbia


By:    /s/ *Elizabeth A. Aloi*

          Elizabeth A. Aloi
          Assistant United States Attorney
          Public Corruption and Civil Rights Section
          U.S. Attorney's Office for the District of Columbia

## DEFENDANT'S ACCEPTANCE

I have read every page of this Agreement and have discussed it with my attorney, David Benowitz. I fully understand this Agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Agreement fully. I am pleading guilty because I am in fact guilty of the offense(s) identified in this Agreement.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Agreement. I am satisfied with the legal services provided by my attorney in connection with this Agreement and matters related to it.

Date: 3-8-2021

**Richard Holman**
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Agreement, reviewed this Agreement with my client, Richard Holman, and fully discussed the provisions of this Agreement with my client. These pages accurately and completely set forth the entire Agreement. I concur in my client's desire to plead guilty as set forth in this Agreement.

Date: 3/9/21

**David Benowitz**
Attorney for Defendant