UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-202 (CJN) |
| | : | |
| RICHARD HOLMAN, | : | |
| Defendant. | : | |

## UNITED STATES' MEMORANDUM IN AID OF SENTENCING

As a senior public official in the United States Department of Agriculture (USDA), the Defendant, Richard Holman, was entrusted with ensuring the physical safety of USDA employees and properties, including by awarding a contract to the best company available to create a USDA credentialling program. Instead, the Defendant accepted bribes, including concierge medical services, in return for giving Communications Resources, Inc. (CRI), a Delaware and Virginia-based company, preferential treatment in the contracting process. Given the Defendant's violation of the public trust, and consistent with the Parties' calculation of the United States Sentencing Guidelines, the Government recommends that the Court impose a sentence of between 12 and 18 months' incarceration.

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

From July 2013 through December 2015, Defendant Holman, then Chief of the USDA Office of Homeland Security and Emergency Coordination (OHSEC) Physical Security Division (PSD), accepted bribes in return for giving CRI preferential treatment in the award of contracts. For this conduct, on May 7, 2021, the Defendant pled guilty to a one-count Information charging him with bribery, in violation of 18 U.S.C. § 201(b)(2)(A) and (C). Sentencing is set for August 10, 2021.

1

During the bribery scheme, and until his retirement in July 2018, the Defendant was responsible for the management of the OHSEC PSD. The PSD is responsible for the protection of all USDA facilities, personnel and assets located outside the Washington, D.C. region. Homeland Security Presidential Directive 12 (HSPD-12) requires all federal agencies to develop and implement a secure and reliable identification for Federal employees and contractors. The PSD was responsible for implementing and managing USDA's HSPD-12 credentialing program, which it did through several contracts awarded to CRI and its joint ventures. In sum, CRI or its related entities were awarded the following contracts to provide secure identification to USDA and contractor employees:

- 2014 HSPD-12 Contract, valued at approximately $2,676,559;
- Health & Human Services (HHS) Contract No. GS-06-F-12-38Z, Task Order No. HHSP233201500014W (2015 HSPD-12 Contract), valued at approximately $3,286,065;
- HHS Contract No. HHSP233201600012B, Task Order No. HHSP23337002 (2016 HSPD-12-Contract), valued at approximately $7,331,828; and
- Physical Support Services BPA Contract, valued at approximately $6,178,081.

The Defendant and other public officials steered contracts to CRI in a variety of ways. For example, as part of the procurement process the PSD was responsible for creating Statements of Work (SOWs) and Independent Government Cost Estimates (IGCEs) to solicit and evaluate contractor proposals. A SOW sets forth the project requirements for prospective contract bidders, including the tasks to be performed and the objectives for the work. An IGCE reflects the government's best estimate of the costs associated with a potential contract. With the Defendant's knowledge, CRI Vice President Eric Schneider drafted - and instructed other CRI employees to draft - SOWs and IGCEs for the 2016 HSPD-12 Contract. The SOW and IGCE were drafted by CRI in such a way to favor the award of the 2016 HSPD-12 Contract to CRI. Schneider and others at CRI and its joint venture sent the SOW and IGCE to the personal email accounts of the

Defendant and other USDA employees to conceal their involvement in preparing the SOW and IGCE. In other instances, to further advantage CRI, Schneider received unsolicited access to competitors' cost proposals from one of the Defendant's subordinates. The proposals related to the PSD Physical Security Services BPA. The Defendant knew that having these cost proposals gave CRI an unfair competitive advantage.

The bribes provided to the Defendant and others at the USDA included Corvette wheels, concert tickets, fees for concierge medical services, PGA tour tickets, dinners, alcohol, entry fees at strip clubs, prescription drugs and related cash tips. The largest bribe the Defendant received known to the Government was for concierge medical services worth $1,800. On November 30, 2015, the Defendant sent an email from his personal email account to Schneider, writing: "Eric, Thoughts about keeping this service?" Attached to the email was an invoice in the amount of $1,800 for "Nu-Living Personal Physical Medical Service Renewal" – a medical concierge service – for the Defendant. On the same date, Schneider forwarded the email and invoice to a CRI employee and wrote: "Can I get u to pay This against hspd12 Hhs Corp holdback please." A few days later, CRI's joint venture wrote a check, payable to "NuLiving Optimal Wellness," in the amount of $1,800 to cover the Defendant's bill.

## II.   The Applicable United States Sentencing Guidelines

As set forth in the Plea Agreement, ECF No. 5, the Parties agree that the following Sentencing Guidelines apply:

Base offense Level (§ 2C1.1): 14
More than one bribe (§ 2C1.1(b)(1)): +2
Acceptance of Responsibility (§ 3E1.1): -3
Total Offense Level:  13

The Government agrees that a 2-level reduction will be appropriate, pursuant to U.S.S.G. § 3E1.1, provided that the Defendant continues to demonstrate acceptance of responsibility, and

that an additional 1-level reduction is appropriate, pursuant to U.S.S.G. § 3E1.1(b), because the Defendant assisted authorities by providing timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial.

The Defendant has a total criminal history score of zero with no juvenile or adult convictions. PSI at ¶ 63. This results in a criminal history category of I. With a total offense level of 13 and a criminal history category of I, the Parties' calculation of the Defendant's Sentencing Guidelines range is 12 months to 18 months' incarceration and a fine range of $5,500 to $55,000.

In the PSR at ¶ 52, the United States Probation Office included an additional four-point enhancement because, as Chief of the PSD, the Defendant was a public official in a high-level decision making or sensitive position. The United States did not include this enhancement in its agreed-upon plea calculation because other officials at USDA, including other senior officials, may have been involved in the procurement process involving the HSPD-12 contracts.

**IV.    The Recommended Sentence is Appropriate Given the Factors Set Forth in 18 U.S.C. § 3553a**

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for a sentencing determination. *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Cano-Flores*, 796 F.3d 83, 90 (D.C. Cir. 2015) ("[T]he first step for the sentencing court is to calculate the [Sentencing Guidelines] range"). While 18 U.S.C. § 3553(a) instructs the Court to "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth" in 18 U.S.C. § 3553(a)(2), the defendant's Guidelines range is one factor the Court must consider in determining an appropriate sentence. 18 U.S.C. § 3553(a)(4). To determine the appropriate sentence, this Court, after calculating the Defendant's advisory Guidelines range, must consider the various factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007). These factors include the nature and

circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to promote respect for the law, just punishment, and adequate deterrence. 18 U.S.C. § 3553(a). Given the Defendant's violation of the public trust, and considering the § 3553(a) factors, the Government recommends that the Court impose a sentence of between 12 and 18 months' incarceration.

First, the nature and circumstances of the offense support a sentence within the Parties' calculated guidelines range. For several years, the Defendant lined his own pockets at the expense of the public good. The HSPD-12 credentialing program was instituted to protect the safety of USDA personnel, and any shortcuts in the procurement process had the potential to jeopardize the security of the very people the Defendant served as a senior public official.

The second factor that the Court must consider in fashioning an appropriate sentence is the history and characteristics of the defendant.  The portrait of the defendant set forth in the PSR is of a person who has been offered a wealth of opportunities, with robust job prospects, and no personal history such that would explain or justify his willingness to abuse his position of trust and put his own financial gain, ahead of the country's best interest.

The Defendant's sentence must also reflect the seriousness of the offense to promote the rule of law, to provide just punishment, and to provide adequate deterrence.  General deterrence is a "crucial factor in sentencing decisions for economic . . . crimes." *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015). The legislative history of section 3553 documents Congress' emphasis on the importance of general deterrence in white collar crime. *See* S. REP. 98-225, 76, 1984 U.S.C.C.A.N. 3182, 3259 (need to deter others is "particularly important in the area of white collar crime"). "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general

deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (citations omitted). This is especially true in procurement fraud and corruption cases like the instant one. It is incumbent upon the Court to send a strong, clear message to the public that such a violation of the public trust cannot and will not be tolerated. Further, "[p]robationary sentences for white-collar crime raise concerns of sentencing disparities according to socio-economic class," *United States v. Levinson,* 543 F.3d 190, 201 (3d Cir.2008); accord *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir.2006).

As noted in the Plea Agreement, ECF No. 5, given his age, and the ongoing public health crisis, a sentence of home confinement is not unreasonable.  Nevertheless, a term of imprisonment is appropriate. "[Bribery] is a serious crime that carries with it a correspondingly serious punishment." *United States v. Morgan*, 635 F. App'x 423, 451 (10th Cir. 2015) (internal citations and quotations omitted).  For policy reasons, including the need for deterrence and to avoid sentencing disparities, Courts "have consistently declined to impose probationary sentences on corrupt government officials." *Id. at* 463 (Holmes, J., concurring) (collecting program fraud bribery cases where a sentence including prison time has imposed, regardless of the size of the bribe).

V.     **Restitution and Forfeiture**

Bribery associated with procurement fraud, such as the instant case, is an offense against property that should trigger the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3553A. "[T]he MVRA requires the sentencing court to order restitution to the victims of defendants who are convicted of certain enumerated crimes," which include crimes involving fraud and deceit. *United States v. Smith*, 297 F. Supp. 2d 69, 71 (D.D.C. 2003); *see also* 18 U.S.C. § 3663A(a)(1) (stating that "court shall order" restitution). Here, the victim is the United States.  The Government

was unable to pinpoint a specific loss to the Government associated with the Defendant's conduct. As noted in the PSR, the Defendant admits receiving bribes worth at least $2,515, which is consistent with the information known to the Government.

**VI.    Conclusion**

For the foregoing reasons, the Government requests the Court impose a sentence of between 12 and 18 months' imprisonment with a three-year period of supervised release.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney for the
District of Columbia

By:    */s/Elizabeth Aloi*
Elizabeth Aloi
NY Bar No. 4457651
Assistant United States Attorney
Public Corruption and Civil Rights Section
555 Fourth Street, NW, 5th Floor
Washington, DC 20530
(202) 695-0610

DATED:  August 3, 2021